Geraldine G. CANNON, Plaintiff,

v.

**LOYOLA UNIVERSITY OF CHICAGO; Northwestern University; Rush–Presbyterian–St. Luke's Medical Center; Southern Illinois University; the University of Chicago; University of Health Sciences/the Chicago Medical School; and the Board of Trustees of the University of Illinois, Defendants.**

Nos. 84 C 8063, 86 C 5437.

United States District Court, N.D. Illinois, E.D.

Dec. 2, 1987.

John Cannon, Chicago, Ill., for plaintiff.

Stuart Bernstein, Susan S. Sher, Robert T. Zielinski, Mayer, Brown & Platt, Chicago, Ill., for University of Chicago and Southern Ill. U.

Barney Ira Cohen, Max D. Brown, Rush–Presbyterian St. Lukes Medical Center, Nina G. Stillman, Allan Lapidus, Vedder Price Kaufman & Kammholz, Chicago, Ill., for Rush–Presbyterian.

Eric A. Oesterle, William T. Barker, Kirk R. Ruthenberg, Sonnenschein Carlin Nath & Rosenthal, Chicago, Ill., for University of Health Sciences/The Chicago Medical School.

James T. Otis, Robert E. Arroyo, Keck, Mahin & Cate, Chicago, Ill., for University of Illinois.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff's litigation has passed the point of being a legitimate attempt to redress any alleged wrong. She has made a mockery of the privilege under our system of government to free access to the courts. She has caused seven institutions of learning needless expenditures of time, energy and money. She has deprived other litigants of the resources this Court has devoted to her duplicative and often frivolous claims. For these reasons, we take the following very harsh and stringent actions reluctantly and after great thought and consideration.

Geraldine G. Cannon wanted to be a doctor. She applied to the seven defendant medical schools for admission at one time or another. Each denied her application. She sued each to gain admission. Every

suit she brought was ultimately dismissed for one reason or another. In the twelve years she has been litigating her admission denials she has brought six different lawsuits, 75–2402, 75–2824, 79–5009, 84–8063, 86–5437 and last but not least, this year's vintage, 87–4829. The last two suits were brought in state court and removed to this Court. This opinion is issued on motions filed in the 1984 and 1986 cases.

### 1984 Case

In the 1984 case, the complaint was dismissed by this Court on February 26, 1985. On May 31, 1985, we granted all seven defendants their fees and costs expended in litigating the 1984 case because Cannon had violated Rule 11, Fed.R.Civ.P. This was a final judgment. It resolved all the claims of the seven defendants, and Cannon even appealed it. *See Cannon v. Loyola University*, 784 F.2d 777 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 880, 93 L.Ed.2d 834 (1987). As recently as April 16, 1987, we specifically told Cannon that our May 31, 1985 judgment was a final judgment. Yet she persists in challenging its enforcement. She raises no valid reasons why it is not enforceable. Her reference to Fed.R.Civ.P. 54(b) is procedural poppycock.

■ The May 31, 1985 judgment was a final appealable judgment which resolved all the claims of all the parties. Rule 54(b) has no application when all the claims have been determined as to all the parties, and the winning parties can enforce the judgment without obtaining an order under 54(b). 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2656 (1983). When defendants Southern Illinois University ("SIU") and the University of Chicago ("UC") petitioned for a rule to show cause why Geraldine Cannon and her husband (and counsel) should not be held in contempt for refusal to comply with citations to discover assets, we referred it to Magistrate Elaine E. Bucklo for resolution.[1] Magistrate Bucklo recommended

---

1. Cannon complains that this Court referred the matter to the Magistrate for a "hearing," and the

Magistrate did not have a "hearing." Cannon, however, has not been denied the opportunity to

that Mr. and Mrs. Cannon be held in contempt, and as a sanction for contempt, that John M. Cannon not be allowed to appear on behalf of himself or Geraldine G. Cannon in any further proceeding before this Court.

 Cannon argues that UC and SIU cannot enforce their fee awards because Rule 54(b), Fed.R.Civ.P., had not been complied with. As we noted above, Rule 54(b) is irrelevant when all claims are resolved. We told Cannon in our April 16, 1987 Order that our May 31, 1985 Order was a final appealable order. It was appealed and affirmed. Accordingly, it could be enforced. Cannon's argument that Rule 54(b) is somehow relevant is ludicrous and clearly designed to frustrate the proper functioning of the judicial system. It is all the more egregious because the citations to discover assets were to enforce Rule 11 sanctions. What little deterrence Rule 11 has for Cannon is destroyed by the legal gobbledygook defendants are forced to wade through just to enforce the judgment. Accordingly, we agree with the Magistrate's recommendation and hold Mrs. Cannon and her husband in civil contempt for failure to comply with citations to discover their assets. We discuss the sanctions for civil contempt below.[2]

### 1986 Case

The 1986 case was filed in state court and removed to this Court on July 25, 1986. On August 4, 1986, we dismissed the 1986 case on the basis of *res judicata.* On January 22, 1987, pursuant to the Report and Recommendation of Magistrate Elaine E. Bucklo, we granted all seven defendants' motion for sanctions under Rule 11. Additionally, we entered the following injunction against Mrs. Cannon: "plaintiff is hereby enjoined from filing further complaints arising out of the defendants' denials of her applications to their medical

schools prior to August 4, 1986." On April 21, 1987, Mrs. Cannon filed a complaint in state court which again raised the facts of her denials to defendant medical schools prior to August 4, 1986 (the 1987 case). Defendants removed the case to this Court on May 28, 1987. Previously, on May 6, 1987, defendants had petitioned this Court for a rule requiring plaintiff to show cause why she should not be held in civil contempt for her violation of the injunction issued by this Court on January 22, 1987, in the 1986 case. This petition has been under advisement since June 2, 1987, when defendants' reply brief was filed. Mrs. Cannon appealed both the dismissal and the injunction. However, the Seventh Circuit held that Mrs. Cannon had failed to timely appeal our August 4, 1986 dismissal, and it thus limited her appeal to the propriety of our January 22, 1987 injunction. Mrs. Cannon was supposed to file her brief on the issue on June 15, 1987. Rather than filing a brief contesting the validity of that injunction, Mrs. Cannon asked the Seventh Circuit to dismiss the appeal or, alternatively, to postpone the briefing for the following reason:

> If Judge Aspen decides that the scope of his injunction involved in [the 1986 case] does not include the new action, then the remaining scope of that injunction will be moot in light of the new action [the 1987 case] and defendants' removal thereof. Further, the award of attorneys' fees involved in [the 1986 case] may be better addressed in light of such a ruling or resolved in connection with the new action. If, however, Judge Aspen decides that the scope of his injunction does include the new action, then such inclusion would be the primary issue presented on appeal to this Court.

(Plaintiff's Motion to Dismiss or, Alternatively, to Postpone Briefing, June 25, 1987).

---

respond to UC and SIU's petition. Because Cannon's only defense to the petition is that the UC and SIU's judgments were not final and enforceable under Rule 54, a legal, albeit frivolous, argument, there was no need to hear oral evidence. We referred the matter to the Magistrate for resolution, and this was done.

**2.** Other contentions raised by Cannon in her objections to the Magistrate's Report have been considered but do not merit discussion.

On June 25, 1987, the Seventh Circuit dismissed Cannon's appeal of our January 22, 1987 injunction with prejudice pursuant to Fed.R.App.P. 42(b). We mention this curious activity of Mrs. Cannon in the Seventh Circuit to highlight the frivolity of her opposition to defendants' petition to show cause why she should not be held in contempt for violating the January 22, 1987 injunction. Cannon raises three reasons why we should not hold her in civil contempt for filing the 1987 case in state court:

> Briefly the petition should be denied because [1] of the jurisdictional infirmity of any injunction issued in this action on January 22, 1987, [2] the inapplicability of the Court's admonition on which defendants rely to the complaint plaintiff has filed in state court and, most importantly, [3] the total lack of any basis for an injunction against the refiling in state court of claims which have been dismissed for lack of pendent jurisdiction or for lack of federal jurisdiction by reason of the Eleventh Amendment.

(Plaintiff's Response in Opposition to Petition of Defendants for Rule to Show Cause, p. 1). Not surprisingly, Cannon does not argue that the 1987 case is outside the scope of our January 22, 1987 injunction, only that our injunction *should* not cover the 1987 case. Whether our injunction should or should not legally cover the 1987 case is a question for the Seventh Circuit, not this Court. Cannon had the opportunity to challenge the injunction, but did not. It is well-established doctrine "that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE v. Sylvania, Inc. v. Consumers Union, Etc.,* 445 U.S. 375, 386, 100 S.Ct. 1194, 1201, 63 L.Ed.2d 467 (1980).

Cannon's first argument against a finding of contempt is that this Court lacked jurisdiction to enter the injunction on January 22, 1987. This contention is incorrect. It is very clear that this Court had jurisdiction to enter the injunction despite our previous dismissal of the complaint on the grounds of *res judicata*. A district court retains jurisdiction to enforce the judgment it enters, and it may do so by issuing an injunction against repetitive litigation. *Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515, 1524 (9th Cir.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984). *See also Cook v. Peter Kiewit Sons Co.,* 775 F.2d 1030, 1034–36 (9th Cir.1985) (although district court lacks jurisdiction to issue injunction against repetitive litigation once it has dismissed complaint for lack of subject matter jurisdiction, it retains jurisdiction to issue injunction if dismissal was for *res judicata*), *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 767 (1986). Nor can Cannon argue we lacked jurisdiction because the Court of Appeals had jurisdiction over the matter. Although the filing of a timely notice of appeal confers jurisdiction over the matter in the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal, *Henry v. Farmer City State Bank,* 808 F.2 1228, 1240 (7th Cir.1986), Cannon did not file a notice of appeal of our August 4, 1986 dismissal until April 21, 1987. Accordingly, we clearly had jurisdiction to enter our January 22, 1987 injunction.

Cannon's second argument refers to defendants' reference in their brief to our admonition in our April 20, 1987 Order denying Cannon's motion to clarify that she "discontinue this endless stream of redundant and meritless pleadings." The next day Cannon filed the 1987 case in state court. Apparently her position is that because the complaint was filed in state court, she did not bother this Court; rather, she argues it is defendants' fault that we are again forced to revisit Cannon's inability to be admitted to medical school. This specious argument does not merit a response.

Finally, Cannon argues "most importantly, there is no basis whatever for applying the injunction of January 22, 1987 to matters which have been held to be outside the jurisdiction of this Court." Whether this is a correct statement of law or not is irrelevant. The forum for raising this argument was in the Seventh Circuit in

Cannon's direct appeal of our injunction. Our injunction is very clear. Cannon was enjoined from "filing further complaints arising out of the defendants' denials of her applications to their medical school prior to August 4, 1986." The injunction on its face prohibits the filing of *any* complaint arising out of the denials for admission prior to August 4, 1986. It clearly covers any and all causes of action relating to those denials. Impropriety of the scope of the injunction is not a defense to violation of an injunction. *Pabst Brewing v. Brewery Workers Local Union No. 77*, 555 F.2d 146, 150 (7th Cir.1977) (violations of the underlying injunction are punishable even though the order is set aside on appeal).

In conclusion, because we find that Cannon's 1987 case filed in state court was clearly within the scope of our January 22, 1987 Order, we find her in civil contempt for filing the 1987 case in direct violation of our injunction.

### Sanctions For Contempt

■ A district court has broad discretion to fashion an appropriate coercive remedy in a case of civil contempt, based on the nature of the harm and the probable effect of alternative sanctions. *N.A. Sales Co. v. Shapman Industries*, 736 F.2d 854, 857 (2d Cir.1984) (citing *United States v. United Mine Workers*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947)). Its determination will not be disturbed absent a clear showing of abuse of discretion or if clearly erroneous. *Walaschek & Associates v. Crow*, 733 F.2d 51, 53 (7th Cir.1984). The primary purpose of sanctions for civil contempt is to coerce the contemner into future compliance with the Court's order and to compensate the complainant for losses sustained for past non-compliance. *Local 28 of Sheet Metal Workers v. EEOC*, 478 U.S. 421, 106 S.Ct. 3019, 3033, 92

L.Ed.2d 344 (1986). Accordingly, in fashioning the appropriate sanctions, our goal is to compensate defendants for Cannon's contempt and to coerce her future compliance.

■ In order to compensate defendants for Cannon's violation of our January 22, 1987 injunction in the 1986 case and refusing to comply with citations to discover assets in the 1984 case, we award defendants their attorneys' fees and costs incurred in bringing the respective petitions to show cause. This would also include any and all fees and costs incurred as a result of Cannon's filing the 1987 case.

In order to insure future compliance with our orders in the 1984 case and 1986 case, we impose the following sanctions. In order to compel compliance with our January 22, 1987 injunction, we fine Cannon $100 per business day she continues to violate our January 22, 1987 Order. She can purge herself of this contempt by voluntarily dismissing her complaint in the 1987 case with prejudice. This fine will start to accrue five business days from the date of this order.

Finally, as a further sanction to ensure compliance with our orders in these cases, we disqualify plaintiff's attorney John M. Cannon from ever representing plaintiff Geraldine G. Cannon in any proceedings arising out of the defendants' denials of her applications to their medical schools prior to August 4, 1986. We very reluctantly impose this sanction but the actions of John and Geraldine Cannon in this litigation have been inexcusable. The type of gross abuse of the judicial system that has taken place during the twelve-year history of this litigation is usually and almost exclusively found with *pro se* litigants who are not bound by the ethical constraints of a member of the bar.[3] But Geraldine has been represented throughout this litigation by a member of the bar, her husband John

3. *See,* for example, *Castro v. United States,* 775 F.2d 399 (1st Cir.1985); *Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515 (9th Cir.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984); *Lacks v. Fahmi,* 623 F.2d 254 (2d Cir.1980); *English v. Cowell,* 117 F.R.D. 128 (C.D.Ill.1987); *Hilgeford v. Peo-* *ples Bank, Inc.,* 652 F.Supp. 230 (N.D.Ind.1986); *Salahuddin v. Coughlin,* 591 F.Supp. 353 (S.D.N.Y.1984); *Heritage Hills Fellowship v. Plouff,* 555 F.Supp. 1290 (E.D.Mich.1983); *Morgan Consultants v. American Telephone and Telegraph,* 546 F.Supp. 844 (S.D.N.Y.1982); *Ex Parte Tyler,* 70 F.R.D. 456 (E.D.Mo.1976).

M. Cannon. The fact that John has been representing Geraldine has added to the difficulty of resolving her frivolous motions and complaints. John has made numerous legal arguments that refer to legal terms, statutes and rules that a *pro se* litigant would not know about. Because of his citation to this legal mumbo jumbo, this Court and defendants' counsel have been forced to research every conceivable picayune issue and to go through excruciating detail to explain why John Cannon's legal snippets are incorrect. For example, in his response in opposition to the petition to show cause in the 1986 case, he states that this Court had no jurisdiction to enter the injunction. His only citation to legal authority is Fed.R.Civ.P. 54(b). He does not even attempt to develop this argument. Rather, he throws it out, and the Court and the defendants are then obligated to address it. Undoubtedly if we did not, the Seventh Circuit would then be forced to explain what we did not. Thus, the presence of John as counsel for Geraldine has contributed greatly to the multiplicity and complexity of the frivolous motions in this litigation. *See, e.g., Cannon v. Loyola University of Chicago,* 116 F.R.D. 244 (N.D.Ill.1987). It is patently obvious that this legalistic nonsense has been designed solely to frustrate and harass the defendants. Accordingly, we find that an order disqualifying John M. Cannon from ever representing Geraldine G. Cannon in any action, previously filed or filed in the future arising out of the defendants' denials of her applications to their medical schools

prior to August 4, 1986, will result in Geraldine's future compliance with our orders.

An additional reason we believe disqualification of John will result in Geraldine's compliance is the economic reality of our order. If Geraldine is forced to hire an attorney and pay in advance to have that attorney conduct her litigation, we believe she will consider carefully any future violations of our orders.[4] The result of this order of disqualification may be that Mrs. Cannon will proceed *pro se* if she persists in filing frivolous matters. Although there is no guarantee that she will not continue to file such matters, they will be much easier for this Court to dispose of without the legal mumbo jumbo of John Cannon. Accordingly, so that there can be no question as to the scope of our disqualification order, we want to make it perfectly clear that if Mrs. Cannon proceeds *pro se,* John Cannon would be in violation of this disqualification order if he assists her in any manner. Just as an attorney may not continue to privately advise a client once he has been disqualified because of a conflict of interest, John Cannon cannot privately advise Mrs. Cannon. He may not, for example, draft a paper for her *pro se* signature. Nor may he give her *any* advice regarding her representation in this Court.

 In addition to our disqualification of John Cannon as a sanction for Mrs. Cannon's civil contempt for failing to comply with citations to discovery assets in the 1984 case and for violation of our January

---

**4.** Litigation is very expensive. Occasionally, it is necessary to file motions to reconsider, motions to vacate, motions to alter or amend judgments, motions to clarify, etc., etc. Fortunately, in the usual case, the client who must pay the bill closely monitors all litigation expenses and measures those expenses against the bottom line. The client, before approving the production and filing of such papers, considers how much it has to gain versus how much the attorneys' fees are costing it. This balance usually assures that one side will not shamelessly and fruitlessly run up the meter. *United States v. Allen L. Wright Development Corp.,* 667 F.Supp. 1218, 1221 (N.D.Ill.1987). When, however, this important control is missing where the client is not paying the bill there is trouble. This is such a case. We do not know if Mr. Cannon bills Mrs. Cannon for his time spent on this matter,

although we seriously doubt he does. But even if he does bill her, she is still only paying her husband. Another reason this disqualification of Mr. Cannon will ensure future compliance is that another member of the bar would not so easily violate the Code of Professional Responsibility, DR 7–102(a)(1) by asserting Mrs. Cannon's claims solely to harass defendants. In short, we sincerely doubt that Mrs. Cannon will be able to hire an attorney to conduct her litigation in the manner Mr. Cannon has done. If she is successful in hiring another attorney it is very likely that it will be because she has a meritorious claim. Thus, by our disqualification of John Cannon, we will have forced Mrs. Cannon to expend money to pursue her claims which should make her think twice, and we have increased the possibility that any claims asserted will not be in violation of DR 7–102.

22, 1987 injunction in the 1986 case, we alternatively disqualify John M. Cannon for violation of Disciplinary Rule 7–102 of the Code of Professional Responsibility, Ill. Rev.Stat. ch. 110A Canon 7 Rule 7–102. Under DR 7–102(a)(1), an attorney may not take action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.[5] Under DR 7–102(a)(2), an attorney may not knowingly advance a claim that is unwarranted or not a good faith argument for an extension, modification or reversal of existing law.[6] There can be no question that John M. Cannon has violated these disciplinary rules numerous times in this litigation, as evidenced by the sanctions we have imposed for Rule 11 violations time and time again and by the sanctions the Seventh Circuit has imposed. We will not reiterate here what is abundantly clear from our previous opinions, and the Seventh Circuit's opinions, i.e. that Mr. Cannon has been seriously derelict in his compliance with DR 7–102(a)(1) and (2). Attorneys are officers of the court, and their first duty is to the administration of justice. Whenever an attorney's duties to his client conflicts with those he owes to the public as an officer of the court, he must give precedence to his duty to the public. *Van Berkel v. Fox Farm and Road Machinery,* 581 F.Supp. 1248, 1251 (D.Minn.1984). *Accord, Steinle v. Warren,* 765 F.2d 95, 101 (7th Cir.1985). Accordingly, although Mr. Cannon may have taken the actions he took in this litigation under the direction of Mrs. Cannon, it is no excuse for a violation of DR 7–102. The usual remedy for violation of these disciplinary rules in the context of non-disciplinary proceedings is to award the opposing party its attorney's fees payable directly by the offending attorney under 28 U.S.

C. § 1927, *see, e.g., Steinle,* 765 F.2d at 102; *Van Berkel,* 581 F.Supp. at 1251. However, to the extent that Rule 11 sanctions and Fed.R.App.P. 38 sanctions have been assessed against Mr. Cannon's wife as plaintiff, it is obvious that monetary sanctions have no deterrent affect on Mr. Cannon's behavior. Accordingly, more severe measures are necessary to remedy Mr. Cannon's blatant violations of the disciplinary code. Therefore, we disqualify John M. Cannon from ever representing his wife Geraldine G. Cannon in any proceeding arising out of the defendants' denials of her applications to their medical schools prior to August 4, 1986.

 Cannon argues in her objections to Magistrate Bucklo's Report and Recommendation to this Court concerning Cannon's failure to comply with citations to discover assets, that the Magistrate's recommendation to disqualify John M. Cannon violates her constitutional right to counsel. Cannon, as is her custom, offers no citation to any authority to support this argument. Thus, this Court is again forced to speculate as to the authority to which Cannon refers. First, it is beyond dispute that there is no constitutional right under the Sixth Amendment to counsel in civil proceedings. *Wolfolk v. Rivera,* 729 F.2d 1114, 1119–20 (7th Cir.1984). Thus, to the extent our order deprives Mrs. Cannon of her choice of counsel in her civil proceedings arising out of the defendants' denials of her applications to their medical schools prior to August 4, 1986, she has not been deprived of a Sixth Amendment right to counsel. To the extent our order deprives Mrs. Cannon of her choice of counsel in civil contempt proceedings, we also do not find a violation of a Sixth Amendment right. Even if the right to retain counsel of one's choice were implicated in a civil

---

**5.** DR 7–102(a)(1) provides the following:

 (a) In his representation of a client, a lawyer shall not

 (1) file a suit, assert a position, conduct a defense, delay a trial or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

Ill.Rev.Stat. ch. 110A Canon 7, Rule 7–102 (1985).

**6.** DR 7–102(a)(2) provides the following:

 (a) In his representation of a client, a lawyer shall not

 (2) knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by a good-faith argument for an extension, modification, or reversal of existing law.

Ill.Rev.Stat. ch. 110A Canon 7, Rule 7–102(a)(2).

contempt proceeding, a matter we express no opinion upon, the right still must give way when required by the fair and proper administration of justice. Courts have the power and duty to disqualify counsel where the public interest in maintaining the integrity of the judicial system outweighs the accused's constitutional right. *In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238, 250–51 (2d Cir.), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986). We find that Cannon's right to counsel of her choice in a civil contempt proceeding is outweighed by the need to preserve the integrity of the judicial system in this case. John M. Cannon has made a mockery of these proceedings and has violated his duty as an officer of the court not to take actions on behalf of his client when it is obvious that such action would serve merely to harass the defendants. Accordingly, we disqualify John M. Cannon from representing his wife Geraldine G. Cannon even in civil contempt proceedings arising out of the defendants' denial of her applications to their medical schools prior to August 4, 1986.

---

In conclusion, we hold Geraldine G. Cannon and her husband in civil contempt for failing to comply with citations to discover their assets in the 1986 case and for her filing the 1987 case in direct violation of our January 22, 1987 injunction. As sanctions for her contempt, we award defendants their attorneys' fees and costs against John M. Cannon and Geraldine G. Cannon, jointly and severally, incurred in bringing the respective petitions to show cause and in responding to Cannon's filing of the 1987 case in state court.[7] Further, we fine Cannon $100 per business day she continues to violate our January 22, 1987 Order. She can purge herself of this contempt by voluntarily dismissing her complaint in the 1987 case with prejudice. Finally, as a

7. Defendants are directed to file within twenty-one days of this order a verified petition of fees and costs.

8. We direct the clerk to send a copy of the opinion to the Illinois Attorney Registration and

further sanction to ensure compliance with our orders in these cases and, alternatively, for violation of DR 7–102, we disqualify Cannon's attorney John M. Cannon from ever representing plaintiff Geraldine G. Cannon in any proceeding arising out of defendants' denials of her applications to their medical schools prior to August 4, 1986.[8] It is so ordered.

Disciplinary Commission and the Executive Committee of the United States District Court for the Northern District of Illinois for whatever actions they deem appropriate.