HARLINGTON WOOD, Jr., Circuit Judge.
 

 This appeal involves the rights of a trustee in bankruptcy to collect fair rental value for use and occupancy when he has not assumed an unexpired lease. We affirm.
 

 I.
 

 The bankrupt, William Schnabel, was a real estate developer who owned a restaurant known as the Harvester Inn. On February 27, 1975 defendants Mitchell and Martha Serrano entered into a two-year lease with Schnabel to operate the Inn. On December 16, 1975 Schnabel filed and was adjudicated a bankrupt. Charles Myler was appointed trustee in bankruptcy on February 26, 1976 and was qualified to act as trustee on March 9, 1976. The Serranos continued to occupy the Inn without paying rent from the date of filing of the bankruptcy petition until September of 1976, when they vacated the premises.
 

 The trustee brought a petition to recover rents from the Serranos in the bankruptcy court. In an order dated February 18,1977, Bankruptcy Judge Merrick ruled that the trustee had not made a formal assumption of the lease as required by rule 607 of the Rules of Bankruptcy Procedure. He also held that the Serranos were liable for fair rental value of use and occupancy for the
 
 *317
 
 nine-month period in which they continued to occupy the premises, a figure he set at $16,500.
 

 The Serranos appealed that decision to the federal district court. Judge McGarr reversed and remanded directing that a determination be made of whether the trustee’s actions had impliedly assumed the lease. On remand, Judge Merrick, without holding a hearing, found that the trustee had not impliedly assumed the lease. Again he set $16,500 as the amount the Serranos owed the trustee for use and occupancy.
 

 The decision was appealed to the district court. This time Judge McGarr affirmed the bankruptcy court’s order. The Serranos appealed that decision to this court.
 

 II.
 

 On appeal the Serranos first contend that the failure of the trustee to accept the lease terminates the trustee’s rights to collect payment for use and occupancy of the premises.
 

 Rule 607 of the Rules of Bankruptcy Procedure, based on the provisions of section 70b of the old Bankruptcy Act, 11 U.S.C. § 110(b) (1976) (amended 1979), gives a trustee in bankruptcy the option to assume or reject an unexpired lease of the bankrupt. If the trustee does not act affirmatively within sixty days after his qualification as trustee, and the court does not extend, the time period, the trustee is deemed to have rejected the lease.
 
 [1]
 
 The option of rejecting the unexpired term of the lease enables the trustee to avoid executory contracts which he deems burdensome on the estate and enables him to sell the premises without regard to the unexpired lease. Rejection thus has the effect of relieving the estate of “any future burdens imposed by the contract,” but it also means the estate “may no longer avail itself of the contract’s benefits .
 
 Danning v. Brunswick Corp.,
 
 466 F.2d 1010, 1011 n.1 (9th Cir. 1972),
 
 cert. denied,
 
 409 U.S. 1126, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973). Rejection of an unexpired lease does not preclude collection of payments for fair rental value of use and occupancy. As Collier has stated a rejection means “that the relation of landlord and tenant is not disturbed, but the contract of rental no longer binds either of them, and the trustee may charge and recover a reasonable rental for the demised premises until the end of the term.” 4A
 
 Collier on Bankruptcy
 
 ¶ 70.44 at 541 n.6 (14th ed. 1967) (quoting
 
 In re Freeman,
 
 49 F.Supp. 163, 165 (S.D.Ga.1943)).
 

 We find Collier’s view very logical and we adopt it here. Regardless of whether the trustee assumes or rejects the lease, he has title to the underlying premises, as the Serranos concede. Rejection merely frees the estate and the premises from the lease obligation so that the trustee may operate the premises as profitably as possible for the benefit of the estate. For example, he may immediately sell the premises without regard to the lease. Before he decides on a permanent solution the trustee may collect fair rental value for use and occupancy from tenants who remain on the property. Since the Serranos continued to occupy the property after the filing of the petition until September 1976, and since the trustee rejected the lease pursuant to rule 607 but not acting within sixty days of his qualification, the trustee may collect fair rental value for use and occupancy from the Serranos for their use of the underlying premises.
 
 [2]
 

 
 *318
 
 III.
 

 The Serranos next contend that in basing the amount owed for use and occupancy on the monthly rent figure under the lease the lower courts deprived them of the opportunity to show that fair rental value was less than the rental figure in the lease.
 

 The bankruptcy court, after remand in reaffirming the fair rental value for use and occupancy of the restaurant for the months of January through September 1976 at $16,500, stated: “There being no other evidence of fair rental value, the rate previously agreed upon by the landlord and the tenant [in the lease] is deemed to be a fair value.” In the absence of evidence of reasonable value for the use and occupancy of the premises it is presumed that the proper compensation for use and occupancy is the amount of rent fixed in the lease.
 
 Wiemeyer v. Koch,
 
 152 F.2d 230, 234 (8th Cir. 1945). Here there is no evidence of reasonable value. If defendants did not have an opportunity to introduce evidence on fair rental value for use and occupancy the case should be remanded to allow them this opportunity. Reviewing the record of this case convinces us no remand is necessary.
 

 The fair rental value for use and occupancy from December 16, 1975 to September 1976 was set at $16,500 at the conclusion of the proceedings in the bankruptcy court prior to the first appeal to Judge McGarr.
 
 [3]
 
 While the record on appeal does not contain the trustee’s pleadings, a reading of the transcript indicates the proceedings were instituted by the trustee in order to collect rents from the Serranos. The Serranos properly should have anticipated that one defense to the trustee’s action would be that there was no lease because the trustee had rejected the lease. Thus, the most for which they were liable was fair rental value of use and occupancy, an amount possibly less than the rent specified in the lease. The poor state of the record on appeal makes it impossible to determine why the Serranos did not raise this defense. We do know that at the conclusion of the first proceedings Judge Merrick set an amount of $16,500 as due for fair rental value for use and occupancy, which suggests to us that the Serranos were not foreclosed from introducing evidence on fair rental value for use and occupancy at the first proceedings. We have no indication that Judge Merrick limited the scope of testimony at these proceedings.
 
 [4]
 
 Further, because of the incompleteness of the record, we cannot conclusively determine whether the bankruptcy court afforded the Serranos an opportunity to present evidence on fair rental value of use and occupancy. Since we feel that the appellants, the Serranos, are responsible for ensuring that this court has a proper record on which to evaluate their argument, we conclude that the amount set by the bankruptcy court for fair use and occupancy — $16,500—is a correct value.
 
 Cf.
 
 Fed.R.App.P. 10(b). We are comforted in this conclusion by the fact that the monthly rent figure in the lease was set less than a year before the period in contention and thus under ordinary circumstances may be presumed to be a fair approximation of the fair rental value of the premises.
 

 
 *319
 
 Accordingly, the decision of the district ■ court is
 

 AFFIRMED.
 

 [1]
 

 . Rule 607 of the Rules of Bankruptcy Procedure provides in pertinent part:
 

 Within 30 days after the qualification of the trustee, unless the court for cause shown extends or reduces the time, the trustee shall file a statement showing any executory contracts of the bankrupt, including unexpired leases, which the trustee has assumed. Whenever practicable, the trustee shall obtain approval of the court before he assumes a contract. Any such contract not assumed within 60 days after qualification of the trustee, or within such further or reduced time as the court may allow within such 60-day period, shall be deemed to be rejected. .
 

 [2]
 

 . The Serranos contend that rejection means that fair rental value for use and occupancy is owed not to the trustee but to the bankrupt. To hold otherwise, they assert, would subject them to double liability for their occupancy
 
 *318
 
 because the bankrupt could still sue under the lease. This is not true. Rejection of the lease means the lease is a nullity and the bankrupt cannot thereafter enforce the lease. The language in 11 U.S.C. § 110(b) that a rejection of an unexpired lease “shall not deprive the lessee of his estate” merely means that if the tenant is injured by the modification of his rights he is deemed a creditor and has a remedy against the bankrupt.
 
 In re Freeman,
 
 49 F.Supp. at 165. It does not enable the bankrupt to collect rents under the contract. It is the trustee who has title to the underlying premises and thus he may collect payment for use and occupancy.
 

 [3]
 

 . Judge Merrick based this figure on $2,000 a month for rent with a $500 credit and $1,000 of lessee’s liabilities.
 

 [4]
 

 . The transcripts we do have in the record on • appeal indicate that evidence was admitted on the condition of the leased premises, but that this was in the context of collection of rent under the lease. At that time the Serranos did introduce evidence on a problem with the furnace. The poor condition of the furnace, of which Judge Merrick was aware when he set the $16,500 figure, appeared to be the only problem with the condition of the building.